UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TONG MYUNG PARK,

           Plaintiff,

     v.

RANDALL LEE CURTIS, et al.,

           Defendants.

Case No.  25-cv-07366-JSC

**ORDER RE: DEFENDANTS' MOTION TO DISMISS, PLAINTIFF'S MOTION TO DISQUALIFY, AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Re: Dkt. Nos. 9, 12, 14

Plaintiff, who is unrepresented by counsel, brings this 42 U.S.C. § 1983 lawsuit arising from an early 1990's criminal prosecution during which he was detained pre-trial and convicted for perjury.  Plaintiff's 1995 conviction has not been overturned. There are three categories of defendants: (1) inspectors, deputy District Attorneys ("DAs"), and supervising DAs who worked at the San Mateo County DA's Office at the time of Plaintiff's prosecution, all sued in their individual capacity; (2) the County of San Mateo, the San Mateo County DA's Office, and the San Mateo County Counsel's Office ("County Defendants"); and (3) Christina Corpus, the Sheriff of San Mateo County at the time of Plaintiff's detention, sued in her official capacity.  (Dkt. No. 1.)[1] Plaintiff brings claims for malicious prosecution, false arrest and imprisonment, Due Process violations, deliberate indifference to safety, and municipal and supervisory liability for the same.

Pending before the Court are three motions.  Defendants' motion to dismiss argues all claims are barred by *Heck v. Humphrey*, a statute of limitations, and absolute immunity. (Dkt. No. 9.)[2]  Plaintiff moves for leave to amend his complaint for the sole purpose of changing Defendant

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] The day before the hearing on Defendants' motion to dismiss, Defendants filed a motion to dismiss Plaintiff's First Amended Complaint.  (Dkt. No. 19.)  There is no First Amended

1    Hall's middle name.  (Dkt. No. 14.)  Plaintiff also moves to "disqualify[] the Office of San Mateo

2    County Counsel from representing individual Defendants" Curtis, Dirickson, Wasserman, Pitt,

3    Dinkelspiel, and Hall "in their personal capacities."  (Dkt. No. 12.)  Plaintiff asserts these

4    defendants have non-waivable conflicts of interest with the County and the County is prohibited

5    from representing former employees.

6         For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss,

7    without leave to amend, and DENIES Plaintiff's motions.  Drawing all reasonable inferences from

8    the allegations in Plaintiff's favor, *Heck v. Humphrey* bars Plaintiff's claims regarding defects in

9    his prosecution that necessarily imply the invalidity of his conviction.  Any claims not barred by

10   *Heck* are barred by the statute of limitations because the claims accrued nearly 30 years ago and

11   are not tolled.  The Court denies Plaintiff's motion to disqualify because the Office of County

12   Counsel has authority to represent individual defendants and there is no conflict of interest in the

13   County doing so.  Given amendment would be futile, the Court does not grant leave to amend.

**BACKGROUND**

**I.    The Complaint's Allegations and Claims**

16        In 1993, Plaintiff was a party to a civil harassment lawsuit.  (Dkt. No. 1 ¶ 26; Dkt. No. 2-

17   1.)[3]  The judge presiding over the lawsuit sent a letter to the San Mateo DA's Office which, in

18   Plaintiff's words, was "compelling" the DA to investigate Plaintiff for perjury.  (Dkt. No. 1 ¶ 26.)[4]

19   Then, "acting on this referral," investigators at the DA's office "lured the Plaintiff to the District

21   Complaint on file; Plaintiff's original complaint is the operative pleading.

22   [3] On its own motion, the Court takes judicial notice of Plaintiff's attached filings, orders, and
     judgments from the civil harassment suit and Plaintiff's criminal case in state court. *See* Fed. R.
     Evid. 201(b), (c)(1); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take
     judicial notice of its own records in other cases, as well as the records of an inferior court in other
     cases.")  The Court, however, does not take judicial notice of the allegations or factual findings
     from those cases for their truths.  *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d
     1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in
     another cause so as to supply, without formal introduction of evidence, facts essential to support a
     contention in a cause then before it[.]")

26   [4] The Complaint cites this letter as "Exhibit I."  (Dkt. No. 1 ¶ 26.)  Exhibit I is labeled "State
     Mateo County State Civil Court Docket Record of Judge McGinn Smith's Order Compelling
     Perjury Investigation of the Plaintiff."  (Dkt. No. 2 at 1.)  Exhibit I is a docket report of Plaintiff's
     civil harassment suit with an affixed seal of a San Mateo County court clerk. (Dkt. No. 2-1 at 33-
     36.)  There does not appear to be a judge's signature or any other indication the judge sent this as a
     letter to the DA.  (*Id.*)

United States District Court
Northern District of California

1    Attorney's Office via a letter … and interrogated him for four hours in custodial like settings

2    [sic]." (Dkt. No. 1 ¶ 27; Dkt. No. 2-1 at 38)

3            Prosecutors subsequently brought perjury charges against Plaintiff. (Dkt. No. 1 ¶ 28; Dkt.

4    No. 2-1 at 40.)  Defendant Curtis, an inspector with the DA's Office at the time, "personally

5    signed a seven-count felony complaint charging Plaintiff with perjury."  (Dkt. No. 1 ¶ 28; Dkt. No.

6    2-5.)  Defendant Paul Wasserman's name was at the top the complaint, but he did not sign it. (Dkt.

7    No. 1 ¶ 29.)  Plaintiff alleges the felony complaint "failed to name a victim or allege an injury of

8    any victim" and "contained no factual allegations, no personal knowledge, and no supporting

9    affidavit."  (*Id.* ¶¶ 33, 41.)

10            On February 15, 1994, Defendant Curtis obtained a search warrant for Plaintiff's home.

11   (*Id.* ¶ 36.)  Defendant Curtis and other officers executed the search warrant a day later.  (*Id.*)

12   Plaintiff was arrested on February 19, 1994 and was present for a preliminary hearing where he

13   was represented by counsel and the government explained the charges and evidence against him.

14   (*Id.* ¶ 38; Dkt. No. 2-2.)  During pretrial detention, Plaintiff was "systematically denied access to

15   law libraries" and assaulted by a fellow inmate.  (Dkt. No. 1 ¶¶ 39, 40.)

16            Plaintiff was convicted of six counts of perjury following a bench trial where he was

17   represented by counsel.  (Dkt. No. 2-1 at 2.)  Plaintiff contends the evidence at trial pertained to

18   his false live testimony, whereas the indictment alleged perjury in a written affidavit.  (Dkt. No. 1

19   ¶ 48.)  Plaintiff therefore claims Defendant Hall, the trial prosecutor, committed a "fraud on the

20   court" because he "knowingly prosecuted Plaintiff based upon a factually and legally baseless

21   Complaint/Information and for an uncharged crime."  (*Id.*)  Plaintiff was released on parole in

22   1998.  (*Id.* ¶ 38.  Since then, "Plaintiff provided [Defendants] notice of the[se] constitutional

23   violations through multiple grievances, FOIA requests, and a Brady motion beginning in 2023."

24   (*Id.* ¶ 5.)

25            Plaintiff also attaches nearly 600 pages of exhibits.  (Dkt. No. 2.)  For example, Plaintiff

26   attaches reports from two handwriting experts dated April 2023 who conclude Defendant Curtis,

27   and not a prosecutor, signed the information in his criminal case.  (Dkt. Nos. 2-4, 2-5.)  In June

28   2025, Plaintiff filed "a Brady motion to demand exculpatory evidence" in state court and made a

California Public Records Act request to the San Mateo County DA's Office for documents or evidence that "directly relate to or support a finding of factual innocence with respect to my 1995 perjury conviction." (Dkt. No. 2-6 at 18; Dkt. No. 2-7 at 7.)  Plaintiff's motion was denied following a hearing. (Dkt. No. 2-6 at 14.)  The DA's office responded to the records request saying it "declines to disclose any records … because no such records exists [sic] which relate to or support a finding of your factual innocence." (Dkt. No. 2-7 at 14.)

Plaintiff also attaches the docket report of a case in the Northern District of California in which Plaintiff petitioned for a writ of habeas corpus on March 2, 1998. (Dkt. No. 2-7 at 21.)[5] On August 1, 2000, the court "dismissed the case without prejudice for lack of subject matter jurisdiction, due to the fact that the petitioner was released from custody since March 10, 1998." (*Id.* at 17, 22.)  From the docket report, it appears Plaintiff filed two motions to "reopen to the original habeas corpus proceeding" in 2002, which were denied, and in 2004, Plaintiff filed a "request … for the court to reassess its position and amend its order" dismissing the case, which was also denied. (*Id.* at 22-23.)

Based on these allegations, Plaintiff brings causes of action for (1) malicious prosecution; (2) a Due Process claim based on defects in the charging documents; (3) a Due Process claim styled "conviction on an uncharged offense and fraud on the Court;" (4) a Fourth Amendment claim that Plaintiff's arrest warrant lacked probable cause, (5) municipal liability against San Mateo County for "policies, customs, and practices" of "failing to adequately train and supervise its prosecutors and inspectors" on the constitutional obligations allegedly violated by prosecutors; (6) an "unlawful initiation of prosecution" claim based on Defendant Curtis's signing the complaint; (7) a *Brady* claim against DAs who "suppressed material exculpatory evidence;" (8) a Fourth Amendment claim his pretrial detention was invalid because the prosecution's initiation was unconstitutional; (9) a Fourth Amendment claim based on a "pre-dawn, no-notice" search of

---

[5] On its own motion, the Court takes notice of the order and docket report Plaintiff attached as exhibits to his complaint from his federal habeas case. (Dkt. No. 2-7 at 17-23); *see* Fed. R. Evid. 201(b), (c)(1).  The Court does not take notice of any factual findings for their truth or adopt any conclusions of law. *Wilson*, 631 F.2d at 119; *M/V Am. Queen*, 708 F.2d at 1491.  Defendants also did not raise the issue of collateral estoppel.

1    Plaintiff's home executed pursuant to a search warrant; (10) a claim against former Sheriff Corpus

2    predicated on Plaintiff's assault by an inmate, alleging policies that created a "deliberate

3    indifference to safety;" (11) *Monell* liability against the County of San Mateo and the County

4    DA's Office for allowing investigators to sign criminal complaints; and (12) supervisory liability

5    against the Chief Deputy DA at the time of Plaintiff's prosecution.

6            Plaintiff prays for declaratory, injunctive, and monetary relief.  Plaintiff requests a

7    "declaratory judgment that the conviction is void solely as to its collateral consequences …

8    because the conviction was obtained through unconstitutional conduct[.]"  (Dkt. No. 1, Prayer For

9    Relief 1.)  He also seeks a "permanent injunction enjoining" all Defendants from "enforcing any

10   collateral consequences of the Plaintiff's 1995 conviction" and from "engaging in any future

11   investigative, prosecutorial, or law-enforcement practices that are similarly unconstitutional."  (*Id.*

12   Prayer for Relief 2.)  Finally, Plaintiff seeks compensatory and punitive damages and attorneys'

13   fees and costs.  (*Id.* Prayers for Relief 3-5.)

14                                        **DISCUSSION**

15           Plaintiff's complaint must state a claim for relief that is "plausible on its face."  *Ashcroft v.*

16   *Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a motion to dismiss, the Court must accept

17   Plaintiff's allegations as true and make all inferences in Plaintiff's favor, but need not accept as

18   true conclusory allegations or conclusions of law.  *Id.* at 678.  And in civil rights cases where the

19   plaintiff is unrepresented by counsel, courts "have an obligation to construe the pleadings liberally

20   and to afford the plaintiff the benefit of any doubt."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.

21   1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

22       **I.       Defendants' Motion to Dismiss**

23               **A.  *Heck v. Humphrey* Bars Counts I through IV, VI, and VIII**

24           When a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether

25   a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

26   sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the

27   conviction or sentence has already been invalidated."  *Heck v. Humphrey*, 512 U.S. 477, 487

28   (1994).  A claim may "necessarily imply the invalidity of [a] conviction" based on its elements.

United States District Court
Northern District of California

5

*See id.* at 484–487 (malicious prosecution claim barred because an element required the prosecution to end in plaintiff's favor); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (false arrest and imprisonment claim required there be no probable cause for a crime, which necessarily implied the conviction for that crime was invalid); *see also Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam) ("There is no question that *Heck* bars [Plaintiff]'s claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him. … [Plaintiff] may challenge the validity of his arrest, prosecution and conviction only by writ of habeas corpus. … To the extent that [Plaintiff] wishes to invalidate his … conviction, whether expressly or by implication, we affirm the district court's dismissal.")

The Ninth Circuit has applied *Heck*'s bar to Fourth Amendment claims challenging the "search and seizure of evidence upon which criminal charges are based." *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000). There, the court reasoned:

> a § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned. Such a holding will avoid the potential for inconsistent determinations on the legality of a search and seizure in the civil and criminal cases and will therefore fulfill the *Heck* Court's objectives of preserving consistency and finality, and preventing "a collateral attack on [a] conviction through the vehicle of a civil suit."

*Id.* (alteration in original) (quoting *Heck*, 512 U.S. at 484). To fulfill the objectives of *Heck*, the Ninth Circuit has applied *Harvey*'s phrase "upon which criminal charges are based" to bar claims challenging searches and seizures that are causally linked to criminal charges being brought and convictions being secured. For example, *Whitaker v. Garcetti*, 486 F.3d 572 (9th Cir. 2007) held *Heck* and *Harvey* barred Section 1983 claims challenging a deceptive search warrant application for a search that revealed "evidence that triggered the police investigations and state prosecutions." *Id.* at 583–85. Similarly, *Szajer v. City of Los Angeles*, 632 F.3d 607 (9th Cir. 2011) rejected claims challenging the probable cause for a search warrant where the search resulted in "the discovery of the assault weapon found in [plaintiffs'] home, which formed the basis for their [guilty] plea and conviction." *Id.* at 611–12. But *Heck* and *Harvey* do not bar Section 1983 claims where the challenged search or seizure did not necessarily result in the

conviction or verdict.  *Compare id.*, *and Whitaker*, 486 F.3d at 583–85, *with Jackson v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014) (collecting cases where Section 1983 claims based on searches and seizures were not *Heck*-barred because the plaintiffs pled *nolo contendre*, meaning "their convictions were in no way the result of" the challenged evidence).

### 1.  Malicious Prosecution Claim (Count I)

"Federal courts rely on state common law for elements of malicious prosecution."  *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019).  Under California law, the elements of malicious prosecution are "the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice."  *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989) (cleaned up).

*Heck* squarely bars Plaintiff's malicious prosecution claim.  The first element of this claim is the prosecution was "pursued to a legal termination in his … favor."  *Id.*  This is identical to the claim barred in *Heck*, where "one element that must be alleged … [was] termination of the prior criminal proceeding in favor of the accused."  512 U.S. at 484.  Accordingly, if a trier of fact found this element of malicious prosecution was met, it "would necessarily imply the invalidity of [Plaintiff's] conviction."  *Heck*, 512 U.S. at 487.  So, the Court dismisses Plaintiff's malicious prosecution claim without leave to amend because amendment would be futile.

### 2.  "Unlawful Seizure and False Imprisonment" Claim (Count IV)

*Heck* also bars Count IV, which alleges Defendant Curtis "caused Plaintiff to be arrested and imprisoned based on a warrant that was unsupported by a sworn complaint establishing probable cause."  (Dkt. No. 1 ¶ 70.)  Exactly like the claim barred in *Cabrera*, Count IV requires a trier of fact to find there was no probable cause to arrest Plaintiff for the then-alleged crime, which would "necessarily imply" Plaintiff's conviction for the same crime was invalid.  159 F.3d at 380.  Plaintiff "may challenge the validity of his arrest, prosecution and conviction only by writ of habeas corpus."  *Smithart*, 79 F.3d at 952.  Accordingly, the Court dismisses Count IV, without leave to amend.

//

### 3. Claims Regarding the Charging Documents and Initiation of the Prosecution (Counts II, III, VI, and VIII)

*Heck* bars Count III, which contends the conviction itself was based on an "uncharged offense" and a "fraud on the Court" because the trial prosecutor used "incompetent hearsay evidence of testimonial perjury … despite the fact that the charging documents … only alleged perjury by written affidavit." (*Id.* ¶ 66.) Count III is therefore an attack on the conviction itself and the evidence upon which it is based, so a judgment in Plaintiff's favor would "necessarily imply the invalidity of his conviction." 512 U.S. at 487; *cf. Whitaker*, 486 F.3d at 583–85 (*Heck* and *Harvey* bar challenge to search revealing "evidence that triggered the police investigations and state prosecutions"); *Szajer*, 632 F.3d at 611–62 (*Heck* and *Harvey* bar challenge to search warrant resulting in "the discovery of the assault weapon found in [plaintiffs'] home, which formed the basis for their plea and conviction"). Accordingly, the Court dismisses Count III, without leave to amend.

Similarly, *Harvey* bars Counts II, VI, and VIII because they challenge defects in the documents "upon which criminal charges [and the conviction] are based." 210 F.3d at 1015. Count II alleges a Sixth Amendment violation because the charging documents were so "devoid of facts" that they did not provide adequate notice of the nature and cause of the accusations against him, meaning Plaintiff could not prepare an effective defense. (Dkt. No. 1 ¶ 63.) Count VI is labeled "unlawful initiation of prosecution," and is predicated on the argument Defendant Curtis signed the charging document, which constituted "fraud upon the court" and violated Plaintiff's due process rights because Plaintiff was not prosecuted by a "constitutionally proper authority." (*Id.* ¶¶ 77-79.) Count VIII, in turn, relies on the same defects because it claims Plaintiff's "two-year pretrial detention constituted an unlawful seizure" because the "fraudulent and void complaint" formed the basis of Plaintiff's arrest warrant. (Dkt. No. 1 ¶ 88.) *Harvey* bars these claims because they amount to "a collateral attack on [a] conviction through the vehicle of a civil suit." 210 F.3d at 1015; *see also People v. Fritz*, 54 Cal. App. 137, 138 (Cal. Ct. App. 1921) (holding a defendant waives objections to an information, including objections to a prosecutor's failure to sign an information, by not filing a timely motion to set aside the information in his

8

1  criminal case).

2      Plaintiff's argument "when a plaintiff is no longer in custody and habeas relief is

3  unavailable, Section 1983 may proceed to grant a declaratory or injunctive relief invalidating the

4  conviction without violating *Heck*" (Dkt. No. 1 ¶ 2) is unavailing.  Plaintiff's cited cases, *Nonnette*

5  *v. Small*, 316 F.3d 872 (9th Cir. 2002) and *Spencer v. Kenma*, 523 U.S. 1 (1998), are inapposite

6  because they address parole-related exceptions to the *Heck* bar.  Plaintiff is not challenging a

7  parole decision here, and unlike parolees in those cases, habeas relief was available for Plaintiff's

8  claims, so *Heck* bars his claims.[6]

9      Accordingly, the Court GRANTS Defendants' motion to dismiss as to Counts II, III, VI,

10 and VIII without leave to amend.

11                          **4.  *Brady* Claim (Count VII)**

12     *Heck* bars Count VII, which is predicated on violations of *Brady v. Maryland*, 373 U.S. 83

13 (1963).  Plaintiff contends three prosecutors "knowingly suppressed material exculpatory

14 evidence, including evidence related to Plaintiff's factual innocence and Defendant Curtis's

15 improper role and bad faith."  (*Id.* ¶ 85.)  Plaintiff contends *Brady* requires prosecutors to disclose

16 material, exculpatory evidence "even after conviction and without a formal request" and "[t]his

17 unconstitutional suppression continues to this day under the office of Defendant Wagstaffe."  (*Id.*)

18 Plaintiff then cites five Supreme Court cases for the notion "[t]he said suppressed *Brady* materials

19 by the said Defendants meets the *Schlup/McQuiggin* actual innocence gateway presenting a

20 federal question to this Court, thereby excusing due diligence and other procedural defaults."  (*Id.*)

21 All five cases involved habeas corpus petitions in federal court.[7]  In any event, *Brady* claims

22

---

23 [6] In the same vein, Plaintiff also appears to rely on those cases for the argument he is not
24 challenging the conviction itself, but instead is seeking an injunction preventing the government
   from engaging in similar misconduct and from the collateral consequences of his conviction.  (*See,*
25 *e.g.*, Dkt. No. 10 at 4 ("The type of relief sought does not require vacating the conviction[.]").
   Given the limited application of *Nonnette* and *Kenma* to cases involving parolees, they cannot be
26 interpreted to authorize Plaintiff's requested relief.  Additionally, Plaintiff's prayer for declaratory
   relief is premised on the invalidity of the conviction because he asks the Court to issue a
27 "declaratory judgment that the conviction is void solely as to its collateral consequences …
   *because* the conviction was obtained through unconstitutional conduct[.]"  (Dkt. No. 1 Prayer for
28 Relief 1) (emphasis added).
   [7] *See generally Schlup v. Delo*, 513 U.S. 298 (1995); *McQuiggin v. Perkins*, 569 U.S. 383 (2013);
   *Murray v. Carrier*, 477 U.S. 478 (1986); *Kuhlmann v. Wilson*, 477 U.S. 436 (1986); *Smith v.*

United States District Court
Northern District of California

"necessarily imply the invalidity of his conviction" because a successful *Brady* claim requires "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Fundamentally, the inquiry under *Brady* "turns on the cumulative effect of all suppressed evidence favorable to the defense," *Kyles v. Whitley*, 514 U.S. 419, 420 (1995), which is precisely the kind of claims *Heck* and *Harvey* forbid. *Cf. Szajer*, 632 F.3d at 607 (claims cannot challenge evidence that "formed the basis for their [guilty] plea and conviction"); *Barnes*, 749 F.3d at 760 (framing the inquiry as whether "convictions were … the result of" the challenged evidence). So, the Court dismisses Count VII, without leave to amend.

### 5. Plaintiff's Remaining Claims

Plaintiff's remaining claims are for an unlawful search of Plaintiff's home (Count IX), for supervisory and municipal liability (Counts V, XI, and XII), and for being denied access to the jail law library before trial.[8] To the extent Plaintiff's law-library claim challenges his inability to prepare for or represent himself at trial, it is barred by *Heck* because the proper vehicle for a Sixth Amendment claim is a writ of habeas corpus. *Cf. Faretta v. California*, 422 U.S. 806, 812–818 (1975) (recognizing, on a direct appeal, the right to self-representation is a Sixth Amendment

---

*Murray*, 477 U.S. 527 (1986).

[8] It is unclear which cause of action Plaintiff's law-library claim falls under because Plaintiff does not specifically re-allege this detail under a cause of action. (*See* Dkt. No. 1 ¶¶ 57-101.) Plaintiff's complaint characterizes this claim as a "violation of his Sixth and Fourteenth Amendment due process rights under the United States Constitution, and in violation of *Faretta v. California*, 422 U.S. 806 (1975), and *Bounds v. Smith*, 430 U.S. 817 (1977)." (Dkt. No. 1 ¶ 39.) *Faretta* held a criminal defendant has a Sixth Amendment right to represent himself at trial. 422 U.S. at 812. But Plaintiff was represented by counsel at his bench trial, (Dkt. No. 2-1 at 2), so it is unclear how *Faretta* relates to Plaintiff's alleged denial of library access.

More likely, Plaintiff is claiming he was denied "the fundamental constitutional right of access to the courts[, which] requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from person trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). An access-to-courts claim requires Plaintiff to show an "actual injury," *Lewis v. Casey*, 518 U.S. 343, 349 (1996), that is, "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim" such as "direct appeals," "habeas petitions," or Section 1983 claims. *Id.* at 352. Because the Court must liberally interpret Plaintiff's pleadings, the Court will assume Plaintiff's access-to-courts claim is tied to an ability to pursue a legal claim related to his detention, whether it be related to the assault he experienced or some other claim that was not alleged under a particular cause of action.

right); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("Despite its literal applicability, however, § 1983 must yield to the more specific federal habeas statute[.]").

Next, *Heck* does not bar Count IX, which contends "Defendants Curtis and other officers executed a pre-dawn, no-notice search of Plaintiff's home" in violation of the Fourth Amendment. (Dkt. No. 1 ¶ 91.) Unlike Plaintiff's other claims, Count IX challenges the manner in which the search was conducted and the seizure of personal property, rather than the evidence revealed or the impact the search had on the outcome of his case, because Plaintiff emphasizes the search was "pre-dawn" and "no-notice." (*Id.*) The record does not indicate what evidence, if any, was revealed from this search. So, on the record before the Court, and giving Plaintiff the benefit of the doubt, *Heck* does not bar Count IX because a favorable judgment on this claim would not "necessarily imply" the invalidity of Plaintiff's conviction. *Cf. Smith v. City of Hemet*, 394 F.3d 689, 695–699 (9th Cir. 2005) (holding *Heck* did not bar claim that police used excessive force after plaintiff had committed the acts upon which his conviction was based because "the record does not reflect which acts underlay his plea and therefore his § 1983 claim is not necessarily inconsistent with his conviction"); *Smithart*, 79 F.3d at 952–53 (holding *Heck* did not bar claim police used excessive force "during the course of an arrest which resulted in Smithart's criminal conviction"). So, the Court DENIES Defendants' motion to dismiss Count IX on the basis of *Heck*.

Finally, based on the analysis above, the Court dismisses Plaintiff's claims for supervisory and municipal liability (Counts V, XI, and XII) to the extent they rely on claims barred by *Heck*. In other words, *Heck* does not bar Counts V, XI, XII to the extent they rely on Plaintiff's Count IX ("Pre-dawn" and "No-Notice" search), Count X ("Deliberate Indifferent to Safety"), or what remains of Plaintiff's claim regarding access to the jail's law library.

## B.  The Statute of Limitations Bars Any Claim Not Barred by *Heck*

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The same is true for "tolling rules." *Id.* at 395. But

United States District Court
Northern District of California

1    "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by

2    reference to state law. … Under those principles, it is the standard rule that [accrual occurs] when

3    the plaintiff has a complete and present cause of action, … that is, when the plaintiff can file suit

4    and obtain relief[.]"  *Wallace*, 549 U.S. at 388 (italics and alteration in original) (cleaned up).

5         Although California currently has a two-year statute of limitations for personal injury

6    cases, Cal. Code of Civ. Pro. § 335.1, Plaintiff's claims that are not *Heck*-barred are subject to the

7    one-year statute of limitations that was in effect until 2003.  *See Alameda Books, Inc. v. City of

8    Los Angeles*, 631 F.3d 1031, 1041, 1041 n.8 (9th Cir. 2011).  That is because California's

9    "[s]tatutes of limitations do not begin to run until a cause of action accrues," *Fox v. Ethicon Endo-

10   Surgery, Inc.*, 35 Cal.4th 797, 806 (2005), but the accrual dates for all of Plaintiff's remaining

11   claims, which is determined by federal law, occurred in the 1990s.  *See Wallace*, 549 U.S. at 391

12   ("Under the traditional rule of accrual … the tort cause of action accrues, and the statute of

13   limitations commences to run, when the wrongful act or omission results in damages. The cause of

14   action accrues even though the full extent of the injury is not then known or predictable.")

15   (cleaned up).

16        Further, under California law, "equitable tolling 'reliev[es] plaintiff from the bar of a

17   limitations statute when, possessing several legal remedies he, reasonably and in good faith,

18   pursues one designed to lessen the extent of his injuries or damage.'"  *Cervantes v. City of San

19   Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Addison v. California*, 21 Cal. 3d 313, 317

20   (1978)).  "A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if

21   the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first

22   claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3)

23   good faith and reasonable conduct in filing the second claim."  *Cervantes*, 5 F.3d at 1275.  "When

24   a motion to dismiss is based on the running of the statute of limitations, it can be granted only if

25   the assertions of the complaint, read with the required liberality, would not permit the plaintiff to

26   prove that the statute was tolled."  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.

27   1980).

28        Accordingly, drawing all inferences from the allegations in Plaintiff's favor, every claim

United States District Court
Northern District of California

12

not barred by *Heck* is barred by the statute of limitations because Plaintiff filed his complaint on September 2, 2025–long after the statute of limitations had run. For instance, Count IX accrued "[o]n February 15, 1994" when Defendant Curtis and other officers searched Plaintiff's home and "seiz[ed] personal property." (*Id.* ¶ 36). Count X accrued at the time of Plaintiff's assault during pretrial detention. And regardless of how one construes Plaintiff's claim regarding access to jail law libraries, the statute of limitations began running, at the very latest, when Plaintiff was released from parole in 1998, that is, when he was free from any constraints on library access and therefore able to "file suit and obtain relief." *Wallace*, 549 U.S. at 388. For these same reasons, Plaintiff's claims for municipal and supervisory liability also fail because they are predicated on the same alleged constitutional violations and the failure to train prosecutors on those constitutional obligations.[9]

Plaintiff also has not sufficiently alleged equitable tolling. Plaintiff alleges he sought three remedies prior to filing the instant lawsuit: "Plaintiff provided [Defendants] notice of the constitutional violations through multiple grievances, FOIA requests, and a Brady motion beginning in 2023." (Dkt. No. 1 ¶ 5.) To the extent these remedies were sufficiently similar to his claims here, Plaintiff sought these remedies at the earliest in 2023–again, long after the statute of limitations barred Plaintiff's claims. (*Id.*; Dkt. No. 2-6 at 21 (*Brady* motion filed on June 4, 2025); Dkt. No. 2-7 at 7, 14 ("California Public Records Act Request for Evidence of Factual Innocence" received on June 24, 2025 and responded to on July 2, 2025).) "Tolling" a statute of limitations does not re-open a statute of limitations that has already passed; that is why equitable tolling requires "*timely* notice to the defendants." *See, e.g.*, *Cervantes*, 5 F.3d at 1275 (emphasis added). So, Plaintiff's claims are not equitably tolled because "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon*, 614 F.2d at 682.

---

[9] Defendant argues Plaintiff's supervisory claims would also fail for an independent reason: absolute immunity shields prosecutors from suits over their "general methods of supervision and training" and over training regarding constitutional obligations because those are "directly connected with the prosecutor's basic trial advocacy duties." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–46 (2009). Because *Heck* and the statute of limitations bar all of Plaintiff's claims, the Court need not address the parties' immunity arguments.

13

Plaintiff's other arguments why the statute of limitations does not bar his claims are unavailing. Throughout his complaint and opposition brief, Plaintiff contends (1) he "could not have reasonably discovered the factual basis for these claims until February 13, 2025," (2) "the County's refusal to produce exculpatory evidence constitutes fraudulent concealment that triggered the 'cause and prejudice' standard;" (3) tolling occurs "where the government's misconduct deprives the plaintiff of a timely filing opportunity;" (4) "extrinsic fraud- here, the DA's intentional suppression of exculpatory evidence – allows a court to set aside procedural bars;" (5) a miscarriage-of-justice exception applies; and (6) there is no statute of limitations for "Fraud-on-the-Court" claims. (Dkt. No. 1 ¶¶ 5, 52; Dkt. No. 10 at 6, 8-9.)

Plaintiff's first argument appears to invoke California's "discovery rule," under which a cause of action does not begin to accrue "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 806. Under the rule, "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). California's "discovery rule" does not apply to Plaintiff's claims because it governs the date of accrual, which "is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 539 U.S. at 388 (italics in original); *see Fox*, 35 Cal. 4th at 807 (noting the rule is an "exception to the general rule of accrual" and "postpones accrual").[10]

Even if the Court applied the "discovery rule," "the court places the burden on the plaintiff to show diligence," *id.* at 808 (cleaned up), that is, "to show he was not negligent in failing to discovery his injury sooner." *Cleveland v. Internet Specialties West, Inc.*, 171 Cal. App. 4th 24,

---

[10] Courts sometimes use the term "toll" to mean a delay of accrual, but these are distinct concepts. For instance, the same *Fox* opinion describes the "discovery rule" as meaning a statute of limitations "will be *tolled* until such time as a reasonable investigation would have revealed its factual basis." *Id.* at 803 (emphasis added). Despite this characterization, the California Supreme Court has made clear the "discovery rule" is a rule about the accrual date of a cause of action, not tolling. *See, e.g., Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (noting the "discovery rule" is a "close cousin" of tolling principles); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988) ("The discovery rule provides that the accrual date of a cause of action is delayed …").

31 (Cal. Ct. App. 2009). Plaintiff claims he did not receive a transcript of his preliminary hearing until February 13, 2025 because all previous court clerks told him the transcript was "destroyed." (Dkt. No. 1 ¶ 52.) But Plaintiff fails to explain why he failed to suspect defects in his prosecution as it progressed nearly 30 years ago. At the hearing, Plaintiff stated he did not have legal training in 1995, but the "discovery rule" hinges on when Plaintiff "suspect[ed] a factual basis, as opposed to a legal theory," for his claims. *Norgart*, 21 Cal. 4th at 397. Plaintiff was present at the preliminary hearing where the government explained the charges and evidence against him, (*see generally* Dkt. No. 2-2), and Plaintiff received a bench trial where he was represented by counsel. (Dkt. No. 2-1 at 2.) And given the nature and timing of the preliminary hearing, nothing in the hearing transcript could have informed Plaintiff of facts that occurred after the hearing, which is virtually his entire prosecution and period of detention. (*See generally* Dkt. No. 2-2.)

Plaintiff's other five arguments as to why the statute of limitations does not bar his claim are unavailing because none of Plaintiff's cited rules and cases pertain to Section 1983 claims. The "cause and prejudice" standard in *Amadeo v. Zant*, 486 U.S. 214 (1988) is exclusively for habeas cases, and *Schlup v. Delo*, 513 U.S. 298 (1995) is also a federal habeas case. So, these cases do not allow the Court to set aside procedural bars in civil cases. The Court also could not locate a case "*Carrier v. United States*, 319 U.S. 493 (1943)." (Dkt. No. 1 ¶ 5).[11] Next, *Hazel-Atlas Glass Co v. Hartford-Empire Co.*, 322 U.S. 328 (1944) and *United States v. Throckmorton*, 58 U.S. 61 (1878) addressed fraud in civil proceedings and said nothing about a statute of limitations for Section 1983 claims. And to the extent Plaintiff argues his criminal conviction was fraudulently obtained, this would "necessarily imply the invalidity of his conviction or sentence," meaning his "complaint must be dismissed." *Heck*, 512 U.S. at 487.

So, based on the foregoing, the Court GRANTS Defendants' motion as to Plaintiff's law-library claim and Counts V, IX, X, XI, XII.

//

---

[11] There is a 1943 case with a similar reporter, *McLeod v. Threlkeld*, 319 U.S. 491 (1943), but this case interprets the Fair Labor Standards Act. And there is a Fifth Circuit case with the same name, *Carrier v. United States*, 369 F.2d 322 (5th Cir. 1966), but it is a wrongful death action arising out of a hurricane.

United States District Court
Northern District of California

1          **C.  Plaintiff's Request for a Stay is Denied**

2          Finally, in his opposition brief, Plaintiff requests a "stay of the proceedings" in the event

3   the Court determines *Heck* bars his claims.  (Dkt. No. 10 at 4.)  The Court denies Plaintiff's

4   request.  The failure to allege a cause of action is not a basis for a stay. At the hearing, Plaintiff

5   suggested he recently appealed a state court's denial of his motion to vacate the judgment in his

6   criminal case.  This does not justify a stay because the Court's dismissal of *Heck*-barred claims is

7   without prejudice; if his conviction is invalidated, Plaintiff may bring a new lawsuit with those

8   claims, except for his false arrest claims. *See supra*, Section I.A; *Wallace*, 549 U.S. at 392–97.[12]

9          **D.  Plaintiff's Motions to Disqualify and for Leave to Amend**

10             **1.  Motion to Disqualify**

11         Plaintiff moves to disqualify the Office of San Mateo County Counsel from representing

12  the individual Defendants because (1) California Government Code Section 811.9(a) does not

13  authorize the office to represent the individual Defendants, and (2) there is a non-waivable conflict

14  of interest between the County and the individual Defendants because, in defending the *Monell*

15  claim, the County may argue the official was not acting within the scope of his employment and

16  the individual Defendants will argue the opposite.[13]  The Court GRANTS Plaintiff's application to

17  file a late reply.  (Dkt. No. 18.)

18         Neither argument warrants disqualification.  First, California Government Code Section

19  811.9(a) neither authorizes nor forbids representation here because it only addresses defenses for

20

21  _____

[12] *Wallace* noted the *Heck* bar "delays what would otherwise be the accrual date of a tort action
until" the conviction is set aside.  *Wallace*, 549 U.S. at 392.  In other words, claims that are *Heck*-
22  barred are not barred by the statute of limitations because, under *Heck*, those claims never accrued
to begin with.  *Wallace*, however, announced an exception to this accrual rule for false arrest
23  claims "where the arrest is followed by criminal proceedings."  *Id.* at 397.  Unlike other Section
1983 claims, such false arrest claims accrue "before the existence of [] the related criminal
24  conviction," *i.e.*, the conviction that erects the *Heck* bar.  *Id.* at 396–97.  Accordingly, the statute
of limitations for pre-conviction false arrest claims "begins to run at the time the claimant
25  becomes detained pursuant to legal process."  *Id.*  So, here, if Plaintiff's conviction becomes
invalidated, he would not be able to bring false arrest claims in a new lawsuit because those claims
26  accrued when he was detained pre-trial nearly 30 years ago.
[13] As a preliminary matter, Defendants objects to Plaintiff's motion because Plaintiff did not attach
27  a declaration in support of the motion's factual contentions.  The Court overrules Defendants'
objection because the only factual contention in Plaintiff's motion is that the individual
28  Defendants are former or current County employees.  (*See generally* Dkt. No. 12.)  Plaintiff's
declaration would be unnecessary and unhelpful on this point.

United States District Court
Northern District of California

1    "judges, subordinate judicial officers, and court executive offers of the superior courts."  Cal. Gov.

2    Code § 811.9(a).  By contrast, Section 825 contemplates the County's authority to represent the

3    individual Defendants because it provides "if an employee or former employee of a public entity

4    requests the public entity to defend him or her" against claims arising out of the scope of their

5    employment.  *Id.* § 825(a).  Second, there is no actual conflict of interest here because all

6    Defendants argued and prevailed on theories unrelated to the scope of employment, namely *Heck*

7    and the statute of limitations.

## 2.  Motion for Leave to Amend

9        Plaintiff seeks leave to amend the Complaint for the sole purpose of replacing the middle

10   name of Defendant Stephen Hall, whom Plaintiff voluntarily dismissed the same day he filed the

11   motion for leave.  (Dkt. Nos. 13, 14.)  One factor a court considers is whether the amendment

12   would be futile because the amended complaint would not survive a motion to dismiss; "[f]utility

13   alone can justify the denial of a motion for leave to amend."  *Nunes v. Ashcroft*, 348 F.3d 815, 818

14   (9th Cir. 2003).  Here, Plaintiff's amendment would be futile because, as the Court ruled above,

15   Plaintiff's claims against Defendant Hall (Counts III and VII) would be barred by *Heck*. (*See* Dkt.

16   No. 1 ¶¶ 65-68, 83–85.)

## CONCLUSION

18       Based on the analysis above, the Court GRANTS Defendants' motion and DISMISSES

19   Plaintiff's claims as to all Defendants, without leave to amend. Plaintiff's claims, read with the

20   required liberality, are barred by *Heck v. Humphrey* and the statute of limitations. And the Court

21   DENIES Plaintiff's request to stay this case while he pursues other efforts to vacate his 1995

22   conviction.  Plaintiff already unsuccessfully attempted to vacate his conviction pursuant to Penal

23   Code section 1473.6, *People v. Park*, No. A169048, 2024 WL 4862152, at *1 (Cal. Ct. App. Nov.

24   18, 2024), *reh'g denied* (Dec. 5, 2024), *review denied* (Jan. 29, 2025), and through a writ of error

25   coram nobis, *People v. Park*, No. A162603, 2021 WL 5979286, at *1 (Cal. Ct. App. Dec. 17,

26   2021).  In any event, the dismissal of his claims as barred by *Heck* is without prejudice to his

27   bringing those claims in a new lawsuit if his conviction is vacated.

28       The Court also DENIES Plaintiff's motions to disqualify and for leave to amend.  A

United States District Court
Northern District of California

17

separate judgment will be entered.

       This Order disposes of Docket Nos. 9, 12, 14, 18, 19.

       **IT IS SO ORDERED.**

Dated: November 21, 2025

JACQUELINE SCOTT CORLEY
United States District Judge